UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

OTIS FOOKS, JR.                            :
      Plaintiff                        :
                                       :
      vs.                              :   CIVIL NO. 1:14-CV-00881
                                       :
                                       :
HERITAGE PAYMENT RECOVERY,                 :
      Defendant                        :

*M E M O R A N D U M*

I.        *Introduction*

We are considering a motion for summary judgment.  This matter relates to a four count complaint in which Plaintiff Otis Fooks (Plaintiff) alleges that Defendant Heritage Payment Recovery (Defendant) violated various sections of the Fair Debt Collection Practices Act (FDCPA or Act).  (Doc. 1).  On April 2, 2015, Defendant filed a motion seeking summary judgment on all four counts.  (Doc. 19).  For the reasons discussed below, we will grant in part and deny in part Defendant's motion for summary judgment.

II.       *Background*

In February of 2013, Plaintiff's minor daughter, Cassidy Fooks (Fooks), completed a "Student Training Contract" at the York Mixed Martial Arts Academy (YMMAA).  (Doc. 19-3).  The contract specified that starting on March 5, 2013, YMMAA would provide martial arts lessons to Fooks twice a week for a period of six months. (Doc. 19-3 at 2).  In consideration for the lessons, the contract required a monthly

payment of one hundred dollars.  (Id.).  On the contract form, Fooks identified Plaintiff as the "person to be billed," providing his name, address, and telephone number.  (Id.). Aware that Fooks was completing the form, Plaintiff provided her with his credit card information.  (Doc. 20 at 3; Doc. 25 at 3).  She wrote the information on the form and identified it as the method of payment.  (19-3 at 2).  YMMAA subsequently provided that information to National Acceptance Company (National) – a company YMMAA engaged to conduct automatic billing on its behalf.  (Doc. 20 at 4-5).

Plaintiff made an initial one hundred dollar payment while physically present at YMMAA.  (Doc. 20 at 4; Doc. 25 at 4).  Thereafter, Plaintiff's credit card was lost, prompting him to cancel the card.  (Doc. 20 at 4; Doc. 25 at 5).  As a consequence, attempts by National to automatically bill Plaintiff's credit card were unsuccessful.  (Doc. 20 at 4; Doc. 25 at 4).  Plaintiff alleges that after realizing that payments were not being made to YMMAA, he paid the balance in cash.  (Doc. 25 at 4).  YMMAA claims that neither it nor National received the remaining $500.  (Doc. 20 at 5).

Due to the alleged lack of payment, National transferred the account to Defendant for collections.  (Id.; Doc. 19-4 at 7-10).  The account, which was in Fooks' name, was transferred via an automated computer process.  (Doc. 20 at 5).  According to Defendant, when the account was transferred, a formatting defect prevented the transmittal of Fooks' date of birth.  (Id.).  Because it was unaware of her status as a minor, on June 20, 2013, Defendant sent a letter to Fooks advising her of her rights under the FDCPA.  (Doc. 20 at 6; Doc. 19-3 at 3).  Between June and September of

2013, in an attempt to contact Fooks and collect the debt, Defendant called Plaintiff's cell phone a total of ten times, resulting in voice messages for "Cassidy Fooks."  (Doc. 20 at 6; Doc. 19-6 at 11).  On September 19, 2013, Defendant called Plaintiff for the last time and actually conversed with Plaintiff about the debt.[1]  (Doc. 20 at 8; Doc. 25 at 8).

During that phone call, Plaintiff spoke to Ben Randise – an employee of Defendant.  (Id.).  Plaintiff advised Randise that Cassidy Fooks was a minor and that he was her father.  (Id.).  Randise informed Plaintiff that a debt had been placed in collections by YMMAA because of missed membership dues.  (Doc. 19-1).  Plaintiff disputed the debt.  (Id.).  He insisted that YMMAA received the membership dues in cash and told Randise that he did not want to be contacted again.  (Id.).  Randise instructed Plaintiff that he would continue to receive phone calls because there was a contract in collections.  (Id.).  Acquainted with the FDCPA from prior work experience, Plaintiff maintained that he could not be called if he informed Defendant he did not want to be contacted.  (Id.).  Talking over each other, Plaintiff and Randise continued to disagree – Plaintiff contending two or three times that he could not be contacted, Randise insisting he could.  (Id.).  At the conclusion of the nearly three minute conversation, Randise told Plaintiff that he had a debt that had to be paid and his credit could be affected.  (Id.).

_____

1.  In its Statement of Material Facts, Defendant identifies the number of phone calls, the dates those calls were made, and details the conversation that occurred on September 19, 2013.  (Doc. 20).  Claiming that the records and recordings speak for themselves, Plaintiff denies these statements.  (Doc. 25).  Because Plaintiff failed to identify how the statements are disputed, we will treat the statements as admitted.  L.R. 56.1; accord Turner v. Prof'l Recovery Servs., Inc., 956 F. Supp. 2d 573, 575 n.1 (D.N.J. 2013).

Shortly thereafter, Randise thanked Plaintiff for his time and ended the conversation. (Id.).

Plaintiff immediately called back and asked to speak to a supervisor.  (Doc. 20 at 10; Doc. 25 at 10).  He was transferred to Matthew Faul.  (Id.).  After recounting his conversation with Randise, Faul told Plaintiff that the FDCPA permitted Defendant to contact him on his cell phone – the phone Plaintiff used as a "home phone."  (Id.). Approximately twenty minutes later, Plaintiff called Faul again and left a voice message. (Id.).  He apologized for having the wrong information, stating that his attorney advised him that he must send a letter in order to obligate Defendant to stop calling him.  (Id.). Eight days later, Defendant received a letter from Plaintiff's counsel demanding that it stop contacting Plaintiff and stating that a FDCPA claim was being prepared.  (Id.).

On May 7, 2014, Plaintiff filed a complaint.  (Doc. 1).  In four counts, he asserts that Defendant violated eight separate sections and subsections of the Fair Debt Collection Practices Act.  (Id.).  Defendant seeks summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. 19).

III.        Discussion

        A.  Legal Standards

We will examine the motion for summary judgment under the well-established standard:  summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a);  Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).   We

"must view all evidence and draw all inferences in the light most favorable to the non-moving party," and we will only grant the motion "if no reasonable juror could find for the non-movant."  Id.  "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'"  Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In our review of the motion for summary judgment, we must analyze all of Plaintiff's FDCPA claims "from the perspective of the least sophisticated debtor."  Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006).  This objective standard is low, protecting all consumers, including the naive.  Id.  However, it "safeguards bill-collectors from liability for bizarre or idiosyncratic interpretations . . . ," Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008), and it does not shield consumers "from the embarrassment and inconvenience which are the natural consequences of debt collection."  Higgins v. Capitol Credit Servs., Inc., 762 F. Supp. 1128, 1135 (D. Del. 1991).  With these standards in mind, we turn to the merits of Defendant's motion.

   *B. Count I*

        In Count I, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692d.

Section 1692d provides that "[a] debt collector may not engage in any conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with the

collection of a debt."  15 U.S.C. § 1692d.  According to Plaintiff, Defendant engaged in

such conduct by claiming it could continue calling Plaintiff even though he informed

Defendant he did not want to be contacted.  (Doc. 24 at 16-18).

        "Generally, whether conduct harasses, oppresses, or abuses will be a

question for the jury.  However, the conduct [P]laintiff alleges must still meet a threshold

level in which the facts support a reasonable inference that []he has made a plausible

claim to relief under § 1692d."  Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp.

2d 589, 596 (E.D. Pa. 2012) (internal quotations and citations omitted).  Here, Defendant

claims that it is entitled to summary judgment because no reasonable juror could infer

that its conduct had the natural consequence of harassing, oppressing, or abusing

Plaintiff.  (Doc. 21 at 7).

        We agree that Plaintiff has failed to make the required threshold showing.

Section 1692c prohibits a debt collector from contacting a consumer only if the

"consumer notifies a debt collector in writing." § 1692c (emphasis added).  Thus, Randise

and Faul were correct when they informed Plaintiff that he could continue to receive

phone calls despite his oral request to the contrary – a conclusion confirmed by Plaintiff's

own counsel.  (Doc. 20 at 10).  Our sister courts have routinely held that non-misleading

                                        6

statements identifying lawful consequences that may result from a failure to satisfy a debt does not amount to conduct prohibited by § 1692d.  See e.g., Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985) (indicating lawsuit would be commenced); Dorsey v. Morgan, 760 F. Supp. 509, 516 (D. Md. 1991) (stating that it would seek attorneys' fees and costs); Gaetano v. Payco of Wis., Inc., 774 F. Supp. 1404, 1412 (D. Conn. 1990) (stating it would resort to all approved means to collect the debt).  Therefore, we find that no reasonable juror could conclude that Defendant engaged in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff.  Id. Accordingly, we will grant Defendant summary judgment on Count I.[2]

> *C. Count II and Count III*

In Count II, Plaintiff claims that Defendant violated § 1692e, 1692e(2)(A), 1692e(8), and 1692e(10).  (Doc. 1 at 7).  They provide as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2)  The false representation of –
>     (A) the character, amount, or legal status of any debt;

---

2.  Although not addressed by either party, Count I of Plaintiff's complaint also alleges that Defendant violated § 1692d by simply calling Plaintiff's phone in an attempt to reach his daughter.  (Doc. 1 at 7).  To the extent that Plaintiff maintains this argument, we find that no reasonable juror could conclude that such calls had a natural consequence of harassing Plaintiff.  But for a few exceptions not applicable in this case, debt collectors are permitted to contact consumers at home during normal hours.  Accord 15 U.S.C. § 1692c.  On page one of the contract, Cassidy Fooks listed Plaintiff's telephone number as the home number of the "person to be billed."  (Doc. 19-3 at 2).  Therefore, calling Plaintiff's cell phone – a telephone that Plaintiff and Fooks shared as a home phone – does not have the natural consequence of harassing, oppressing, or abusing Plaintiff.

> . . .
> (8)   Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

15 U.S.C. § 1692e, 2(A), (8), (10).  In Count III, he alleges violations of § 1692f and 1692f(1).  They state:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following is a violation of this section:
>> (1) The collection of any amount (including any interest, fee charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f, (1).  Plaintiff relies on two theories to support these claims.  We address each in turn.

In his first theory, Plaintiff argues that the sections enumerated in Counts II and III were violated when Randise asserted that Plaintiff owed the debt.  (Doc. 24 at 7, 12-15).  According to Plaintiff, his daughter entered into the contract, not him.  (Id.). Thus, when Randise informed him that he was responsible for the debt and that it may affect his credit, Defendant made a false representation to collect a debt in violation of § 1692e and § 1692e(10), it made a false representation of the character of the debt in violation of § 1692e(2)(A), and it threatened to communicate false credit information in violation of § 1692e(8).  (Doc. 1 at 7; Doc. 24 at 11-15).  For the same reason, Plaintiff

argues that Randise's assertion was an unfair and unconscionable means to collect the debt in violation of § 1692f and an attempt to collect an amount not authorized by the agreement in violation of § 1692f(1).  (Doc. 24 at 6-7).

With respect to this theory, Defendant claims it is entitled to summary judgment on Counts II and III because Randise's assertion was true.  (Doc. 21 at 12; Doc. 30 at 7).  It gives two arguments in support.  First, Defendant notes that § 1692c(d) defines "consumer" to include a "parent (if the consumer is a minor)."  (Id.).  Thus, according to Defendant, as Cassidy Fooks' parent, Plaintiff was a debtor obligated under the contract.  (Id.).  We find this argument unavailing.  Section 1692c(d) states, "For purposes of this section, the term 'consumer' includes the consumer's . . . parent (if the consumer is a minor) . . . ."  15 U.S.C. § 1692c(d).  Because Plaintiff's claims are not pursuant to § 1692c, this definition, by its own terms, is inapplicable.

Second, Defendant argues that Plaintiff was obligated to pay the debt because he entered into the contract with YMMAA.  (Doc. 30 at 7).  According to Defendant, despite the fact that Cassidy Fooks completed the form, it was Plaintiff that intended to be bound by its terms.  (Id.).  In response, Plaintiff argues there are disputes of fact concerning the formation of the contract that preclude summary judgment.  He asserts that he did not enter into the contract because he did not sign the form.  (Doc. 24 at 7, 12-14).

Under Pennsylvania law, a contract is formed if: (1) both parties manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement

were sufficiently definite to be enforced; and (3) there was mutuality of consideration. Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).  Here, the only element the parties dispute is whether Plaintiff manifested an intention to be bound.  When the facts are not in dispute, the question of whether a contract was formed is a question of law for the court to decide.  In re Home Prot. Bldg. & Loan Ass'n, 17 A.2d 755, 757 (Pa. Super. Ct. 1941).

   Here, the undisputed facts establish that Plaintiff was aware of the contract (Doc. 19-2 at 10), he knew his daughter completed the contract form (Id.), he provided his daughter with his credit card information to write onto the form (Doc. 20 at 3; Doc. 25 at 3), and he made the initial payment while physically present at YMMAA.  (Doc. 20 at 4; Doc. 25 at 4).  We find it clear from these undisputed facts that Plaintiff manifested intent to be bound by the terms of the contract.  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009) ("In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior."); Reynolds v. Univ. of Pa., 747 F. Supp. 2d 522, 542 (E.D. Pa. 2010) (finding that by making tuition payments and attending classes party manifested intention to be bound).  The fact that Plaintiff did not sign the contract is of no significance.  A contract need not be executed unless expressly required by law or the intent of the parties.  Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999).  Here, Pennsylvania's statute of frauds, 33 PA. CONS. STAT. § 1, does not require a six month service contract to be signed, and no term in the

contract indicates that the parties intended the formation to be contingent upon a signature.  <u>Shovel</u>, 739 A.2d at 138 (stating express terms and party actions, rather than presence of signature line, determines intent).  Because Plaintiff manifested an intent to be bound by the contract, he is obligated for any debt thereunder.  Accordingly, this theory of liability on Counts II and III must fail.

Plaintiff's alternate theory is that Defendant attempted to collect more than he actually owed.  In support, he claims that Defendant attempted to collect: (1) a $500 balance that Plaintiff already paid; and (2) $208 worth of fees and costs which were not authorized by the agreement.  (Doc. 24 at 7-11, 13-14).  According to Plaintiff, these were false representations of the amount of debt in violation of § 1692e(2)(A) and attempts to collect more than was authorized by the agreement in violation of § 1692f and § 1692f(1).  (<u>Id.</u>).  As to the first claim, Defendant asserts it is entitled to summary judgment because Plaintiff has produced no evidence that the debt was actually paid.[3]  (Doc. 30 at 10-12).  With respect to the second, it argues that the contract does allow for the collection of fees.  (Doc. 30 at 7-8).  We address each in sequence.

During Plaintiff's deposition, he testified that after realizing that payments were not being made via his credit card, he paid the $500 balance in cash.  This is the

---

3.  Defendant also argues that it should be granted summary judgment on this claim because it has no duty to investigate and may seek to collect the amount "authorized." While it is true that the FDCPA does not impose a duty to investigate, the Act is a strict liability statute.  <u>Yentin v. Michaels, Louis & Assocs., Inc.</u>, No. 11-CV-88, 2011 WL 4104675 at * 9, 13-17 (E.D. Pa. Sept. 15, 2011).  Thus, Defendant must bear the burden of establishing a bona fide error defense, not simply rely on a lack of duty to investigate. <u>Id.</u>  We discuss the bona fide error defense <u>infra</u> at note 6.

only evidence produced by Plaintiff to support this claim. (Doc. 30 at 10). Defendant

argues that this single statement is insufficient to create a genuine issue of fact. (Doc. 30

at 10) (citing Nationwide Mut. Ins. Co. v. Roth, 252 F. App'x 505, 508 (3d Cir. 2007)). We

agree. "[C]onclusory, self-serving [statements] are insufficient to withstand a motion for

summary judgment. Blair, 283 F.3d at 608. Instead, the [party] must set forth specific

facts that reveal a genuine issue of material fact." Kirleis v. Dickie, McCamey & Chilcote,

P.C., 560 F.3d 156, 161 (3d Cir. 2009) (internal quotations omitted). Here, Plaintiff's self-

serving testimony merely states the conclusion that he paid the debt. He set forth no

specific facts – such as when and to whom the balance was paid – and he produces no

documentary evidence – such as a payment receipt or bank statement – to support his

conclusion. See Blair, 283 F.3d at 608 (noting that an affidavit setting forth party's

financial status was conclusory and unsupported by documentary evidence).

Accordingly, we find that Plaintiff has failed to produce sufficient evidence from which a

reasonable juror could conclude that the debt was already paid.

Next, with respect to the collection of fees and costs, the second page of

the contract, in pertinent part, states the following: "In the event this contract is referred to

an attorney or collection agency for collection, Buyer agrees to pay reasonable collection

costs, attorney's fees, and court costs incurred by the Buyer, if permitted by law." (Doc.

19-7 at 5) (emphasis added). Reading the phrase "incurred by the Buyer" literally,

Plaintiff asserts that Defendant could not collect the $208 worth of fees since he, "the

Buyer," incurred no fees during the collection process. (Doc. 24 at 15). Defendant

12

argues that it could collect fees because a "practical reading" of the language reveals that if the contract was referred to a collection agency, Plaintiff was responsible for fees and costs.  (Doc. 30 at 8).

"The paramount goal of contract interpretation is to determine the intent of the parties."  Garden State Tanning, Inc. v. Mitchell Mfg. Grp., 273 F.3d 332, 335 (3d Cir. 2001).  It is a well-settled principle that the "intent of the parties to a written contract is contained in the writing itself."  Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993).  If the writing is ambiguous, it is interpreted by a fact finder.  Allegheny Int'l v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994).  If it is unambiguous, the writing is interpreted by the court as a question of law.  Id.  Thus, as a threshold matter, we must determine whether the terms at issue here are clear or ambiguous.  Am. Eagle Outfitters, 584 F.3d at 587.  See also Nat'l Data Payment Sys., Inc. v. Meridian Bank, 18 F. Supp. 2d 543, 547 (E.D. Pa. 1998) ("Whether contract provisions are clear or ambiguous is a question of law.").

"[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."  Chester Upland Sch. Dist. v. Edward J. Meloney, Inc., 901 A.2d 1055, 1060 (Pa. Super. Ct. 2006).  We find that the phrase "incurred by the Buyer" is subject to more than one reasonable interpretation.  The word "incur" is defined as "[t]o suffer or bring on oneself (a liability or expense)."  BLACK'S LAW DICTIONARY (10th ed. 2014).  Using this definition, Plaintiff's interpretation of the contract is reasonable: there were no costs or fees for Defendant to

collect because Plaintiff (the Buyer) did not suffer or bring on himself any liability or expense during the collection process.  When read in context, however, Defendant's interpretation is also reasonable: by "agree[ing] to pay reasonable collection costs, attorney's fees, and court costs incurred by the Buyer," Plaintiff (as Buyer) agreed to pay all fees and costs that he caused by failing to satisfy his contractual obligations, if those fees were permitted by law.  Because we find that the contractual terms are susceptible to more than one reasonable interpretation, the ambiguity must be resolved by a jury.

Accordingly, we find that genuine issues of material fact preclude summary judgment with respect to Plaintiff's §§ 1692e(2)(A), 1692(f), and 1692f(1) claims, but only on the theory that Defendant attempted to collect fees and costs that Plaintiff did not owe.[4]

*D.  Count IV*

In Count IV, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692g(a). Pursuant to § 1692g(a), a debt collector must send a consumer a written notice within

---

4.  Although not addressed by either party, Count III of Plaintiff's complaint also alleges that Defendant violated § 1692f and 1692f(1) by: (1) placing calls to Plaintiff's cell phone to collect debt owed by his daughter; (2) failing to update its records to stop calling Plaintiff after being told to he did not want to be contacted; (3) falsely implying that its actions were compliant with the FDCPA; and (4) calling Plaintiff back immediately after he hung up.  (Doc.1 at 9).  To the extent Plaintiff continues to advance these claims, we find that Defendant is entitled to summary judgment.  First, as discussed above, calling Plaintiff's phone, telling Plaintiff that he would continue to receive calls, and suggesting that such conduct was compliant with the FDCPA were permitted by the Act.  Further, the evidence produced by the parties establishes that Defendant did stop calling Plaintiff after he insisted on not being called again, and it was Plaintiff that called Defendant back immediately after hanging up.  (Doc. 20 at 10).  Accordingly, we find that such conduct was not prohibited by § 1692f and 1692f(1).

five days after the debt collector's initial communication with that consumer.  15 U.S.C. § 1692g(a).  A "consumer," as defined by 15 U.S.C. § 1692a, is "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a.  Plaintiff argues that when Randise told him he owed the balance of the membership dues, he became a consumer, requiring Defendant send him a written notice within five days.  (Doc. 1 at 10-11).  Plaintiff claims Defendant failed to do so, instead sending a written notice to his daughter.  (Doc.19-3 at 3).  Defendant argues that it is entitled to summary judgment on Count IV because: (1) pursuant to the definition of "consumer" in § 1692c(d), the letter Defendant sent to Cassidy Fooks satisfied the notice requirement; and (2) a self-serving denial of receipt of the letter is not sufficient to withstand summary judgment.

Defendant's arguments are without merit.  First, as we discussed above, the definition of consumer in § 1692c(d) is inapplicable; it only applies to claims brought pursuant to § 1692c.[5]  Second, Plaintiff's statement is not the only evidence indicating that Defendant failed to send a letter.  Indeed, during a deposition, Defendant's President admitted that it never sent Plaintiff a letter.  (Doc. 24-2 at 8).  Accordingly, we find that Defendant is not entitled to summary judgment on Count IV.[6]

---

5.  Even if it did apply, Defendant's argument would fail.  The definition provides that "consumer" includes the parent of the consumer if the consumer is a minor.  § 1692c(d).  The opposite is not true: "consumer" does not include the minor child of the consumer if the consumer is a parent.  See id.  Thus, if we were to apply this definition, a letter sent to Plaintiff would satisfy the notice requirement for Cassidy Fooks, but a letter sent to Cassidy Fooks would not satisfy the requirement for Plaintiff.

6.  At the conclusion of each of its briefs, Defendant argues in the alternative that if it did violate the FDCPA, it is entitled to summary judgment under the bona fide error defense.  (Doc. 21 at 18; Doc. 30 at 14).  As we read its briefs, Defendant attempts to use this

*IV.*         *Conclusion*

For the reasons discussed above, we will grant Defendant summary judgment on Count I. On the theory that Defendant attempted to collect fees and costs that Plaintiff did not owe, we will deny summary judgment on Plaintiff's § 1692e(2)(A) claim in Count II and § 1692f and 1692f(1) claims in Count III. In all other respects, we will grant Defendant summary judgment on Counts II and III. On Count IV, we will deny Defendant's motion for summary judgment. We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

---

affirmative defense solely to shield itself from any liability that may have resulted from its attempts to contact and collect a debt from Plaintiff's minor daughter. (Doc. 21 at 21) ("Thus, even if it were a violation of the FDCPA to mistakenly send a letter to a minor or leave a message for a minor, Heritage is entitled to the bona fide error defense, and summary judgment should be granted); (Doc. 30 at 14-15) ("Mr. Hoke, Heritage's President, testified that Heritage has enacted policies and procedures regarding FDCPA compliance. He also testified that it was unintentional to attempt to collect a debt from Cassidy Fooks and that this error occurred in spite of Heritage's procedures."). Because none of the surviving claims are based on Defendant's attempted contact with Cassidy Fooks, Defendant's argument is moot.